UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

Bky No. 10-43005 NCD

In re:

Chapter 7

Auto Point, Limited

Debtor.

---

**NOTICE OF HEARING, MOTION FOR EXPEDITED
HEARING AND FOR RELIEF FROM THE AUTOMATIC STAY**

TO:   Parties in interest pursuant to Local Rule 9013-3:

1.     Automotive Finance Corporation ("AFC"), by and through its undersigned counsel, moves the Court for the relief requested below and gives notice of hearing.

2.     A hearing on this motion will be held before the Honorable Nancy C. Dreher, Courtroom 7 West, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, at 2:30 p.m. on May 6, 2010, or as soon thereafter as counsel may be heard.

3.     Any response to this motion must be filed and delivered as soon as possible, but in any case prior to the scheduled hearing.  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.     This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1.  The proceeding is a core proceeding.  The petition commencing this Chapter 7 case was filed on April 23, 2010.  The case is now pending in this Court.

5.     This motion arises under 11 U.S.C. §§ 362 and 363(e) and Fed. R. Bankr. P. 4001.  This motion is filed under Fed. R. Bank. P. 9014 and Local Rules 9006-1 and 9013-1 to 9013-3.  Movant requests hearing on an expedited basis and relief from the automatic stay.

6.   **The Debtor's Indebtedness to AFC**.  The Debtor is indebted to AFC under an inventory ("floor plan") financing arrangement with the Debtor for the purchase of certain vehicles (the "Vehicles") in which Auto Point granted AFC a first and prior security interest.  In connection with that arrangement, the Debtor executed and delivered to AFC a Demand Promissory Note and Security Agreement (the "Security Agreement"), dated September 9, 2002. A true and correct copy of the Security Agreement is attached hereto as **Exhibit A**, the terms of which are incorporated herein by reference.  Pursuant to the Security Agreement, AFC advanced funds for the acquisition, financing and/or refinancing by the Debtor of vehicle inventory (the "Inventory").   Debtor is indebted to Auto Point under the Security Agreement in the principal in an amount of $154,923.34, plus accrued interest.   Pursuant to the Security Agreement, Debtor agreed under Section 4.0 that its right to sell Inventory is conditioned upon its holding "the amount received from the disposition of Inventory in Trust for the benefit of AFC and Dealer shall pay to AFC, in accordance with 2.6, an amount equal to the unpaid balance of the Purchase Money Inventory Obligations . . ." *Security Agreement* ¶ 4.  Pursuant to the Security Agreement, Debtor granted AFC a security interest and purchase money security interest in the Purchase Money Inventory and all titles to any Vehicles purchase by using AFC's floor plan financing and all proceeds of the foregoing (collectively the "Collateral").   AFC perfected its security interest in the Collateral by filing a Financing Statement with the Minnesota Secretary of State as Document No. 2306192 on March 12, 2001.  The Financing Statement is attached hereto as **Exhibit B**.

7.   **The Debtor's "Out-of-Trust" Sales.**  The amount AFC advances to the Debtor for this purpose is based upon the cost of inventory purchased by the Debtor.  Consequently, because it is understood that the AFC's advances are not for the Debtor's general working capital

or operational needs or requirements, the Debtor has agreed under Section 4.0 of the Security Agreement that its right to sell inventory is conditioned upon its holding "the amount received from the disposition of Inventory in Trust for the benefit of AFC and Dealer shall pay to AFC, in accordance with 2.6, an amount equal to the unpaid balance of the Purchase Money Inventory Obligations . . ." *Security Agreement* ¶ 4. Contrary to the terms of the Security Agreement, the Debtor sold Collateral "out-of-trust" by failing to remit payment to AFC, as Auto Point was obligated to due under the Security Agreement, has failed to assemble and return to AFC any of the Collateral and has failed to make any payment for the out-of trust sales. For these and other reasons, Auto Point is in breach of the Security Agreement. Among potential other sales, Auto Point has sold the following Vehicles without remitting payment to AFC (the "Out-of-Trust Sales"):

| Year | Model | VIN | Stock Num |
|------|-------|-----|-----------|
| 2004 | Landcruiser | 054902 | 527 |
| 2006 | IS 250 | 023441 | 515 |

Upon information and belief, the proceeds from these Out-of-Trust Sales are no longer available or recoverable.

Additionally, AFC extended financing to Auto Point to purchase the following Vehicles, which based on a site visit by an AFC representative on March 31, 2010, no longer appear to be on Auto Point's lot:

| Year | Model | VIN | Stock Num |
|------|-------|-----|-----------|
| 2006 | E Class | 191229 | 514 |
| 2006 | S Class | 471867 | 521 |
| 2002 | 430 | 086195 | 522 |
| 2002 | X5 | P38918 | 524 |
| 2005 | GX470 | 079652 | 525 |
| 2008 | LR2 | 034159 | 526 |

Upon information and belief, three of the above-identified vehicles have been sold to an out-of-state buyer and may be no longer recoverable.

8.     Among other remedies available to AFC under the Security Agreement is the immediate right to repossess the Collateral, accelerate all indebtedness of Debtor to AFC under the Security Agreement, and recover all costs and expenses, including all attorneys' fees, incurred by AFC in exercising any and all of its remedies under the Security Agreement, or enforcing any of the terms, conditions or provisions of the Security Agreement. *Security Agreement* ¶ 8.0, et al.

9.     **Pre-Bankruptcy Litigation between AFC and the Debtor.** Because of the Debtor's defaults under the Security Agreement, AFC commenced an action in the Hennepin County District Court on April 7, 2010, by filing a Verified Complaint to enforce its rights under the Security Agreement due to Debtor's defaults, described in part above. *See Auto Finance Corporation v. Auto Point Limited, et al.*, Court File No.: 27-CV-10-7018 (Henn. Cty. Dist. Crt.). On this same date, AFC also filed a Motion for Injunctive Relief and Replevin. A hearing on AFC's Motion was scheduled for hearing on April 9, 2010, before the Honorable Gary R. Larson. Following the hearing, Judge Larson issued an Order that granted, among other relief, the following: (1) that AFC's request for replevin of the Collateral; (2) that Debtor and its agents and employees immediately disclose the location of the Collateral to AFC and deliver the Collateral to AFC; (3) that in the event any of the Collateral is not in the possession, custody, or control of Debtor and the location of the Collateral is not disclosed to AFC, then Debtor appear for a deposition to give testimony as to the location of any of the Collateral not in the possession, custody, or control of the Debtor; (4) that upon filing a bond in the amount of $155,000.00 approved by the Court and conditioned for the return of the Collateral to Debtor, if a return be

adjudged, the Sheriff of any county in the State of Minnesota where the Collateral may be situated, or any duly authorized representative of the same, is directed to seize the Collateral by any and all legal means; (5) that except as specifically set forth in the Order, Debtor was enjoined and restrained from taking any action concerning the Collateral including, without limitation, the sale, transfer, diversion or other disposition of any items of the Collateral; and (6) that AFC shall immediately inform all third-parties who may be in possession of any of the Collateral of the terms of this order and shall request that such third-parties allow AFC to recover possession of such Collateral. A true and correct copy of Judge Larson's April 9, 2010, Order is attached hereto as **Exhibit C**.

10.    **Seizure of Debtor's Building.**   On April 14, 2010, AFC deposited with the Hennepin County District Court a court-approved bond in the amount of $155,000. A true and correct copy of the bond is attached hereto as **Exhibit D**. Pursuant to Judge Larson's Order, on April 16, 2010, the Hennepin County Sheriff seized the Debtor's floor room facility located at 9130 Olson Memorial Highway, Minneapolis, Minnesota, 55427 (the "Facility"). The Hennepin County Sheriff maintains possession of the keys to the Debtor's facility. The only vehicle located at the Debtor's facility was a 2009 Nissan Altima, vehicle identification number ("VIN") 1N4AL21E39C111029 (the "Nissan").

11.    **Debtor's surrender of Collateral.**   Prior to the filing of the Petition, on April 20, 2010, Debtor surrendered to AFC two Vehicles: 2002 LEXUS 430 (VIN JTHBN30F520086195) and 2002 BMW X5 (VIN 5UXFA53512LP38918).

12.    **Allow AFC to Seize and Dispose of the Collateral**.   AFC moves the Court, pursuant to 11 U.S.C. ¶ 363(e) and Rule 4001(a), Federal Rule of Bankruptcy Procedure to allow AFC to seize and dispose of its Collateral and take all other actions necessary to enforce AFC's

Security Agreement in accordance with the April 7, 2010, Order issued by Judge Larson of the Hennepin County District Court.

13.    **Expedited Relief**. Expedited relief is available, for cause, pursuant to Fed. R. Bank. P. 9006(c) and Local Rule 9006-1(d).   In this case, for the reason set forth above, including, without limitation, irreparable harm to AFC of the relief requested herein is not granted, AFC requests an expedited hearing on its motion.   The Out-of-Trust Sales made by Auto Point occurred sometime in March 2010. AFC did not locate any of its Collateral at Auto Point's Facility during a site visit in early April 2010. The Collateral is highly mobile and liquid. Ever day that passes reduces the likelihood that AFC will recover the Collateral.   Without expedited relief, the Collateral will be lost leaving AFC without recourse.   Without expedited relief, AFC will be irreparably harmed.

14.    **Substantive Relief – Cause**.   Under § 362(d)(1), relief is appropriate for cause where AFC lacks adequate protection of its interest in the Collateral.   The standard for "cause" under § 362(d)(1) is broad, and may extend beyond the one enumerated ground of lack of "adequate protection" as defined by 11 U.S.C. §361. *In re Lilyerd*, 49 B.R. 109, 116 (Bkrtcy. D. Minn. 1985) (citing *In re Rich*, 42 B.R., 42 B.R. 350, 354 (D.Md 1984)).   In this case, as a result of the Debtor's existing and continuing Out-of-Trust Sales and resulting diminution in the value of AFC's collateral, among other reasons, the Debtor cannot adequately protect AFC during the Case.  As indicated above, the Debtor has already made Out-of-Trust Sales.  In addition, AFC's Collateral is no longer at the Debtor's place of business and its location is currently unknown. Given the highly mobile nature of the Collateral and the relatively ease for liquidation, relief from the stay will allow AFC exercise the remedies granted by Judge Larson's April 9, 2010,

Order to locate and seize the Collateral.    In sum, cause exists for relief under 11 U.S.C.

§ 362(d)(1).

16.      Under 11 U.S.C. § 362(g), the burden is on the Debtor to prove the absence of

cause or the existence of adequate protection.

16.      Pursuant to Local Rule 9013-2(c), because the verified motion establishes the

facts supporting AFC's motion, AFC does not presently intend to call a witness at the hearing on

its motion.  If the Court orders an evidentiary hearing, however, AFC reserves the right to call

witnesses as to these facts, if necessary.

WHEREFORE, AFC moves the Court for an Order terminating the automatic stay with

respect to: (1) AFC's interest in the Collateral; (2) the Facility and its contents; (3) AFC's

remedies provided by Judge Larson's April 9, 2010, Order; and (4) for such other relief as may

be just and equitable.

**DATED:** May 4, 2010.          **FABYANSKE, WESTRA, HART & THOMSON, P.A.**

By:   /s/ Matthew T. Collins
      Paul L. Ratelle (#127632)
      Matthew T. Collins (#0315758)
      Jeffrey W. Jones (#311418)
      800 LaSalle Avenue, Suite 1900
      Minneapolis, MN 55402
      (612) 359-7600
      **ATTORNEYS FOR AUTOMOTIVE FINANCE
      CORPORATION**

## VERIFICATION

I, Lisa Miko, the collection manager of the corporation movant named in the foregoing notice of
hearing and motion, declare under penalty of perjury that the foregoing is true and correct
according to the best of my knowledge, information and belief.

Executed on  May 4, 2010          Signed:    /s/ Lisa Miko

"THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND AN INTEREST
THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP. AS AGENT."

## DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT

FOR VALUE RECEIVED, the undersigned dealer ("Dealer") hereby promises to pay to the order of Automotive Finance Corporation, an Indiana corporation ("AFC"), with its principal office at Two Parkwood Crossing, 310 East 96th Street, Suite 300, Indianapolis, Indiana 46240 or such other place as AFC may designate, the principal sum of One Hundred Fifty Thousand Dollars ($150000) (the "Aggregate Advance Limit") or such greater or lesser principal amount as may be outstanding pursuant hereto, with interest on said outstanding balance prior to an Event of Default, as defined in Section 7.0 hereof, at the rate of interest (based upon a 360 day year, compounded daily) set forth in the Term Sheet and as amended from time to time. In the event that no Term Sheet is executed or effective, then interest shall accrue at a variable rate, adjusted each business day, based upon the most recent prime rate published in The Wall Street Journal plus five percent (5%) per annum. Interest shall accrue from, the earlier of the date of a requested Advance or the date that an Obligation is incurred and shall be compounded daily. After an Event of Default, interest shall accrue at a variable rate, adjusted each business day, based upon the most recent prime rate published in The Wall Street Journal plus eight percent (8%) per annum, with such interest compounded daily and accruing from the date on which the Event of Default first occurred. All payments shall be made in lawful money of the United States and in immediately available funds.

Until demand by AFC or until an Event of Default (at which time the Obligations shall at AFC's option and without notice become immediately due and payable in full), Dealer shall pay the Obligations as provided in Section 2.6.

The Dealer: (a) waives demand and presentment for payment, protest, notice of protest and notice of non-payment or dishonor of this Note; (b) consents to any extension of the time of payment hereof; (c) waives all defenses based on suretyship or impairment of collateral; and (d) waives any defenses which the Dealer may assert on the Obligations including but not limited to failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of legal capacity, statute of limitations, lender liability, accord and satisfaction, and usury.

In consideration of the premises and the mutual covenants and conditions contained herein, the parties further agree as follows:

### AGREEMENT

1.0 **DEFINITIONS.** When used herein, the following terms shall have the following meanings:

1.1 Advance - discretionary loan(s) to Dealer or payment(s) on behalf of Dealer by AFC pursuant to the terms of this Note.

1.2 Aggregate Advance Limit - the maximum lending limit, as set forth above.

1.3 Check - a payment by or on behalf of Dealer to AFC which is other than a payment in cash or via certified funds.

1.4 Collateral – all of Dealer's assets and properties wherever located, including without limitation (a) all machinery, furniture, and Equipment of any kind now owned or hereafter acquired by Dealer, (b) all Vehicles, vehicle parts, and other inventory of any kind now owned or hereafter acquired by Dealer, including, without limitation, the Purchase Money Inventory as hereinafter defined, (c) all documents, including, but not limited to Titles, accounts, Retail Installment Contracts, chattel paper, electronic chattel paper, leases, insurance policies, instruments, fixtures, investment property, monies, certificates of deposit, deposit accounts, letter of credit rights, supporting obligations, and general intangibles (including payment intangibles) now owned or hereafter acquired by Dealer, (d) any and all proceeds, products, additions, accessions, accessories, and replacements of the foregoing, (e) all of Dealer's computer records, software, business papers, ledger sheets, files, books, and records relating to the foregoing, now owned or hereafter acquired, and (f) the following:

1.5 Curtailment Date - that certain day at the end of the Period when all Obligations concerning or relating to an item of Purchase Money Inventory become due and payable.

1.6 Dealer's Place of Business -any or all of the following location: (a) the place where the Collateral and Dealer's books and records are kept; (b) the place from which Dealer's business affairs and operations are conducted, unless otherwise disclosed in writing to AFC by Dealer; and (c) the place where Dealer's registered office is located.

1.7 Equipment – all goods, other than inventory, of any kind and wherever located.

1.8 Floorplan Fee - that non-refundable fee payable to AFC by Dealer in the amount set forth on the Term Sheet for each Period, or portion thereof, in which an Advance for each individual item of Purchase Money Inventory is outstanding, provided that in the event no Term Sheet is executed and effective, then the Floorplan Fee shall be equal to One Hundred Dollars ($100.00). Notwithstanding the foregoing or any provision in the Term Sheet to the contrary, AFC reserves the right to charge a Floorplan Fee in a higher amount as a condition to making an Advance if, in its sole discretion, AFC determines that the circumstances so warrant.

1.9 Interest - those finance charges owed by Dealer to AFC on all outstanding Obligations, which charges shall begin to accrue, on the earlier of the date of each Advance or the date that an Obligation is incurred, compounded daily, and shall be payable at the rate and upon the terms and conditions set forth in this Note.

1.10 Late Fee - that non-refundable fee payable to AFC by Dealer, in the amount equal to the Floorplan Fee for each item of Purchase Money Inventory, assessed each week, or portion thereof, that Dealer fails to repay Obligations under this Note when due as provided by this Note. Dealer agrees that this Late Fee is a reasonable estimate of AFC's probable losses due to the delay, inconvenience, and administrative expenses associated with late payment. AFC may also include in the Late Fee an amount equal to the greater of $25 or the maximum amount permitted by law for each Check tendered to AFC, by or on behalf of Dealer, that is subsequently dishonored, in addition to any charge or fee imposed by the depository institution for each returned or dishonored item and any other charges or fees permitted by law.

1.11 Note - this Demand Promissory Note and Security Agreement.

1.12 Number of Curtailment Date Extensions - that number of times set forth on the Term Sheet, that the Curtailment Date may be extended for an item of Purchase Money Inventory pursuant to this Note, provided that in the event no Term Sheet is executed and effective, the Number of Curtailment Date Extensions shall be zero (0).

1.13 Obligations - all Advances, debts, Purchase Money Inventory Obligations, liabilities, financial obligations, charges, expenses, fees, attorney fees, costs of collection, covenants, and duties owing, arising, due, or payable from Dealer to AFC of any kind or nature, present or future, under any instrument, guaranty, or other document whether arising under this Note or any other agreement, whether direct or indirect (including those acquired by assignment), absolute or contingent, primary or secondary, due or become due, now existing or hereafter arising and however acquired including, without limitation, all Interest, Floorplan Fee(s) and Late Fee(s), and other expenses, costs or fees provided for herein.

1.14 Odometer Disclosure Statement - that statement of mileage for a Vehicle required, by the Motor Vehicle Information and Cost

COSMOS Rev. 4/15/01

EXHIBIT
A

"THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND AN INTEREST THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP. AS AGENT."

Savings Act as amended (49 U.S.C. § 32701 et seq.) and the regulations implementing same (49 C.F.R. § 580 et seq.), to be provided to a Vehicle transferee by the transferor.

1.15 Period - that number of days set forth on the Term Sheet, beginning on the date of an Advance and ending on the Curtailment Date that an item of Purchase Money Inventory will be financed by AFC pursuant to this Note, provided that in the event no Term Sheet is executed and effective, then the Period shall be thirty (30) days.

1.16 Purchase Money Inventory - any and all Vehicles, vehicle parts, or goods of any kind, now or hereafter acquired by Dealer with an Advance.

1.17 Purchase Money Inventory Obligations - the liabilities owing, arising, due, or payable from Dealer to AFC with respect to specific Advances for specific items of Purchase Money Inventory now existing or hereafter arising.

1.18 Retail Installment Contract - that contract of sale and security agreement, whether or not constituting chattel paper under Article 9 of the UCC, whereby Dealer sells Purchase Money Inventory to a retail customer in the ordinary course of Dealer's business.

1.19 Term Sheet - that agreement in effect from time to time executed by Dealer and AFC containing information including but not limited to the Floorplan Fee, Interest and Period, in the form similar to Exhibit A.

1.20 Title - the certificate of title or other document issued by a duly authorized state, province or government agency evidencing ownership of a Vehicle.

1.21 UCC - the Uniform Commercial Code as enacted in Indiana and amended from time to time. Any term used in the UCC and not defined herein has the meaning given to the term in the UCC as presently enacted in Indiana or modified hereafter.

1.22 Vehicle - a vehicle, the ownership of which is embodied in a Title, driven or drawn by mechanical power, manufactured primarily for use on the public streets, roads, and highways.

1.23 Terms and Conditions – All provisions of this Note, excluding any language specifically referencing Dealer by individual or business name or address, or referencing the dollar amount of Dealer's Aggregate Advance Limit.

## 2.0 FINANCING PROCEDURES.

2.1 Discretionary Advances. AFC may, in its sole discretion, from time to time make an Advance to or on behalf of Dealer for the purpose of enabling Dealer to purchase and/or hold Purchase Money Inventory for resale, and for other purposes as provided herein. Dealer acknowledges and agrees that AFC may, with or without cause, refuse to make an Advance. Dealer further agrees that AFC's decision to make an Advance shall be binding only if it is in writing and signed by AFC. Dealer and AFC agree that Dealer is not obligated to finance any Purchase Money Inventory, or any other assets through AFC.

2.2 Advance Requests: Purchase Money Inventory. Dealer may request an Advance for the purpose of enabling Dealer to purchase and hold an item of Purchase Money Inventory for resale by providing AFC with: (a) a copy of the bill of sale which indicates the vendor and the actual purchase price of the Purchase Money Inventory; and (b) as to Vehicles, a completed Odometer Disclosure Statement and the Title duly assigned to Dealer.

2.3 Advance Requests: Other Purposes. Dealer may request an Advance for purposes other than enabling Dealer to purchase and hold an item of Purchase Money Inventory for resale by providing AFC with: (a) a written request setting forth the purpose for the requested Advance, and (b) such other information as AFC may require. If AFC elects to

make any such Advance, the Advance shall be deemed an additional Obligation under this Note from the date on which the Advance is made.

2.4 Conditions to Advances. As a condition precedent to an Advance, Dealer shall deliver to AFC, at AFC's request, a certificate in a form acceptable to AFC certifying that (a) no Event of Default has occurred or is continuing, (b) Dealer is in complete compliance with the terms and conditions of this Note, (c) all prior Advances made for the purpose of enabling Dealer to purchase an item of Purchase Money Inventory have only been used to purchase Vehicles encumbered by this Note, (d) no material adverse effect to the operation or prospects of Dealer (financial, business, labor or otherwise) exists or is threatened, (e) no checks issued by Dealer to AFC have been dishonored, and (f) such other information as AFC may request. In addition, if the Advance request is for the purpose of enabling Dealer to purchase and hold an item of Purchase Money Inventory for resale, Dealer shall deliver to AFC, at AFC's request, a certificate in a form acceptable to AFC, certifying that the Advance will only be used to purchase Vehicles encumbered by this Note.

2.5 Advances Without Request. If at any time Dealer is in default on any obligation to a third party, AFC may in its sole discretion elect, but is not required, to make payment or transfer on Dealer's behalf to the third party, in any amount up to the total obligation owed by Dealer to the third party, as a means of satisfying Dealer's obligation to the third party in whole or in part. If AFC elects to make any such payments or transfers, they shall be deemed additional Obligations under this Note from the date on which the payment or transfer is made. Such payments or transfers may be made without prior notice to Dealer and without regard to any Aggregate Advance Limit then in effect for Dealer.

2.6 Repayment of Purchase Money Inventory Obligations and Obligations. Dealer shall pay to AFC at the offices of AFC the Purchase Money Inventory Obligations, on demand and without notice, with respect to an item of Purchase Money Inventory on the earlier of: (a) forty-eight (48) hours after the disposition by sale or otherwise of an item of Purchase Money Inventory; or (b) the Curtailment Date. AFC shall apply such payments to the Purchase Money Inventory Obligation incurred from said item of Purchase Money Inventory. Notwithstanding anything herein to the contrary including Sections 3.0 and 4.0 if, after the disposition by sale or otherwise and subsequent payment to AFC as delineated above, a shortage exists between any payments received by AFC and the Purchase Money Inventory Obligation with respect to an item of Purchase Money Inventory, that shortage shall be considered an Obligation owed by Dealer to AFC and secured with Collateral other than Purchase Money Inventory. Dealer shall pay to AFC at the offices of AFC all Obligations, on demand and without notice, relating to an item of Purchase Money Inventory on the earlier of: (a) forty-eight (48) hours after the disposition by sale or otherwise of an item of Purchase Money Inventory; or (b) the Curtailment Date. Dealer shall pay to AFC at the offices of AFC all other Obligations, on demand and without notice. The order and method of application of such payments of the Obligations, excluding payments with respect to Purchase Money Inventory Obligations, shall be in the discretion of AFC.

2.7 Extension of Curtailment Date. If Dealer is in compliance with all other provisions of this Note, AFC may, in its sole discretion, permit an extension of the Curtailment Date relative to an item of Purchase Money Inventory for a Period, upon the payment of Interest, Floorplan Fee(s) and a minimum of Ten Percent (10%) of the outstanding Advance relating to such item of Purchase Money Inventory.

2.8 Presumptions Regarding Outstanding Balance. The date and amount of each Advance made by AFC and of each repayment of principal or interest thereon shall be recorded by AFC. The aggregate unpaid principal amount, interest, fees, and other Obligations so recorded by AFC shall constitute prima facie evidence of the sums owing and unpaid under this Note; provided, however, that the failure by AFC

COSMOS Rev. 4/15/01

"THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND A SECURITY INTEREST
THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP. AS AGENT."

to so record any such amount or any error in so recording any such amount shall not limit or otherwise affect the liability of Dealer under this Note to repay the Obligations.

2.9 Purchase Money Inventory and Title Control. At any and all reasonable times Dealer shall allow AFC's officers, employees, agents, attorneys, designees and representatives (including but not limited to representatives of AutoVin, Inc.) access to Dealer's books and records and the Dealer's Place of Business for the purpose of conducting an audit of Dealer's inventory to determine that any and all items of Purchase Money Inventory for which an Advance is outstanding are in fact in Dealer's custody and control. Dealer agrees to pay all of AFC's expenses in conducting such audit. Dealer may request the Title to a Vehicle or Vehicles held by AFC for purposes of correcting same or taking said Vehicle(s) to an auction. If AFC in its sole discretion agrees with such request, Dealer shall deliver to AFC a check or draft in an amount equal to the Advance(s) relating to such Vehicle(s). Unless such Title(s) are returned to AFC within the time period established by AFC, AFC may deposit or present such check or draft for payment and any outstanding Obligation(s), Floorplan Fee(s) or accrued interest relating to Advance(s) for such Vehicle(s) shall become immediately due and payable.

2.10 Authorization of AFC. By execution of this Note, Dealer authorizes AFC and any of its officers or employees to execute and file, on behalf of Dealer and without Dealer's signature, original financing statements, amendments, continuation statements, and any other documents AFC deems necessary or desirable to protect its interests. Dealer authorizes AFC to supply any omitted information and correct errors in any document executed by or on behalf of Dealer, and to contact any bank or other depository institution to obtain account information concerning Dealer. Dealer authorizes AFC to obtain credit information from a credit bureau, and any financial institutions or trade creditor that Dealer has provided as well as other credit investigation that AFC in AFC's sole discretion deems necessary. Dealer also authorizes AFC to contact any third parties to disclose information, including information contained in this application, for the purpose of, among other things, obtaining intercreditor agreements and perfection of AFC's security interest. Further, if a credit line is granted, Dealer authorizes AFC to review Dealer's account periodically, which could include obtaining additional credit reports. In addition, Dealer shall execute the Power of Attorney attached hereto as Exhibit B.

3.0 GRANT OF SECURITY INTEREST. To secure Dealer's prompt payment of the Purchase Money Inventory Obligations, Dealer hereby grants to AFC a lien and a purchase money security interest in the Purchase Money Inventory and the Titles thereto. To secure Dealer's prompt payment of the Obligations, Dealer hereby grants to AFC a lien and security interest in all of the Collateral except the Purchase Money Inventory. Dealer understands and agrees that AFC at all times intends to maintain the status of a purchase money secured creditor with priority rights in the Purchase Money Inventory as provided under the UCC. Therefore, to the extent purchase money status can still be maintained under applicable law, Dealer also grants AFC a lien and a security interest as follows: (a) the Purchase Money Inventory also secured Obligations that are not Purchase Money Inventory Obligations, and (b) Collateral that is not Purchase Money Inventory also secures Purchase Money Inventory Obligations.

4.0 SALES OF PURCHASE MONEY INVENTORY. Unless and until an Event of Default shall have occurred, Dealer may sell the Purchase Money Inventory to bona fide buyers in the ordinary and regular course of Dealer's business, but nothing herein shall be deemed to waive or release any interest AFC may have hereunder or under any other agreement in any proceeds or replacements of the Purchase Money Inventory. Upon the sale of any item of Purchase Money Inventory, Dealer shall hold the amount received from the disposition of inventory in Trust for the benefit of AFC and Dealer shall pay to AFC, in accordance with Section 2.6, an amount equal to the unpaid balance of the Purchase Money Inventory Obligations and Obligations relating to such Purchase Money Inventory.

5.0 DEALER'S COVENANTS. Until payment in full of all of the Obligations or unless AFC shall otherwise consent in writing, Dealer covenants and agrees as follows:

5.1 Disposition of Purchase Money Inventory. Unless Purchase Money Inventory is the subject of a Retail Installment Contract that satisfies the requirements of Section 6.7 or is sold pursuant to Section 4.0, Dealer shall not attempt to or actually, sell, lease, transfer, mortgage, encumber, or otherwise dispose of the Purchase Money Inventory, any part thereof, or any interest therein, or remove, for a period exceeding twenty-four (24) hours, any item of Purchase Money Inventory from the Dealer's Place of Business. In addition, Dealer shall keep the Purchase Money Inventory free from any lien, security interest, mortgage, claim, charge or other encumbrance, other than those granted pursuant to this Note or permitted in writing by AFC.

5.2 Unconditional Payment Obligation. Dealer's obligation to make full payment under this Note is unconditional and shall not be affected by claims or disputes Dealer may have against any other person, including but not limited to claims or disputes Dealer may have against any person or entity who transferred, conveyed, or sold one or more Vehicles to Dealer.

5.3 Maintenance of Collateral. Dealer shall keep and maintain the Purchase Money Inventory in good repair and safe condition, and not cannibalize, alter or substantially modify the Collateral, nor secrete or conceal the Collateral.

5.4 Dealer's Books and Records. Dealer has kept and shall continue to keep true and accurate books and records concerning its business affairs and the Collateral. Such books and records shall contain full and correct entries of all business transactions and shall be kept in accordance with generally accepted accounting principles consistently applied. Dealer shall at least annually and upon request furnish financial statements to AFC based upon said books and records and upon request shall permit AFC to make extracts from and receive from Dealer originals or true copies of Dealer's books and records and any papers relating to the Collateral. All financial statements submitted to AFC shall fairly present the financial condition of Dealer and any other person or entity identified in such financial statements as of the preparation date. Dealer shall notify AFC, in writing, of any material adverse change in the financial condition of Dealer as compared to any prior financial statements submitted to AFC.

5.5 Insurance. Dealer shall keep the Collateral insured against such risks and in an amount equal to the Aggregate Advance Limit or such lesser amount as AFC may from time to time permit and with such insurer or insurers as AFC may from time to time approve. Dealer shall provide AFC, or AFC's designees, with copies of its policies of insurance covering the Collateral together with evidence that the premium therefor has been paid and that AFC has been named as loss payee or additional insured on such policies. The proceeds of loss under such policies are hereby assigned to AFC. If AFC determines, in its sole discretion, that Dealer has not maintained adequate insurance coverage for the Collateral, AFC may, but has no obligation to, purchase a policy or policies of insurance (through forced placement or otherwise) any may treat amounts so expended as additional Obligations. The risk of loss or damage to the Collateral shall at all times remain solely with Dealer.

5.6 Litigation Notice. Dealer shall provide to AFC within five (5) days after service of process, notice of any litigation, arbitration, or other proceeding by or before any court, governmental agency, or entity affecting Dealer.

5.7 Taxes. Dealer has paid and shall pay all taxes and assessments relating to its business affairs and shall pay all taxes and assessments at any time levied on the Collateral as and when the same become due and payable in the ordinary course. If Dealer fails to pay taxes or assessments relating to the Collateral, AFC may, but has no

"THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORP. AS AGENT."
THEREIN HAS BEEN GRANTED TO HARRIS N.E.S.I.P.T CORP. AS AGENT."

obligation to, pay said taxes or assessments and may treat amounts so expended as additional Obligations.

5.8 **Further Assurances.** Dealer shall execute any and all documents necessary to confirm an Advance or perfect AFC's lien and security interest in the Collateral. Dealer shall, at any time and at the request of AFC, assign in writing any or all Retail Installment Contracts and deliver the originally executed Retail Installment Contracts to AFC.

5.9 **Acknowledgments.** Dealer acknowledges that AFC has relied on Dealer's Covenants and Dealer's Representations and Warranties as delineated in this Note, and is not charged with any contrary knowledge that may be ascertained by examination of the public records, or that may have been received by any officer, director, agent, employee, representative or shareholder of Dealer.

5.10 **Changes in Dealer's Business.** Upon the execution of this Note, Dealer shall provide AFC with a document listing Dealer's Place of Business. Dealer shall provide AFC written notice within 30 days of any of the following: (a) any change in Dealer's Place of Business or chief executive office, (b) any change in the corporate, business or ownership structure of Dealer, (c) any change in the state or jurisdiction of incorporation, organization or business entity registration of Dealer, (d) any change in the legal name or trade name of Dealer, (e) any consolidation or merger with any other person or entity, (f) any change in control of Dealer, (g) any sale, transfer or insurance of equity securities or reclassification, readjustment or other change in capital structure, or (h) any amendment to Dealer's articles, by-laws or other organizational documents.

5.11 **Notice to Account Debtors.** Dealer shall, at any time and at the request of AFC, notify any or all account debtors or obligors that AFC has the right to enforce Dealer's rights against the account debtors or obligors, that AFC has a security interest in the accounts and chattel paper, and that the account debtors and obligors must direct payment to AFC.

5.12 **Guaranties.** At the request of AFC prior to the execution of this Note and at any time thereafter, Dealer shall deliver to AFC a duly executed guaranty or guaranties of a third party or parties in the form attached hereto as Exhibit C.

5.13 **Control Agreements.** Dealer shall cooperate with AFC in obtaining control agreements in form and substance satisfactory to AFC with respect to Collateral consisting of deposit accounts, certificates of deposit, investment property, letter of credit rights and electronic chattel paper. In the event satisfactory control agreements cannot be obtained, Dealer shall cooperate with AFC in placing the account or other property in AFC's name as owner or co-owner.

6.0 **DEALER'S REPRESENTATIONS AND WARRANTIES.** On the date of this Note and until the Obligations are paid in full and Dealer has performed all of its obligations hereunder, the representations and warranties contained in this Note and every factual matter in any other document delivered to AFC by or on behalf of Dealer shall be true and correct in all material respects and will remain true and correct.

6.1 **Permits and Licenses.** Dealer has all applicable permits and licenses necessary to conduct business as a retail or wholesale seller, as applicable, of the Collateral. Dealer has all required government certificates, licenses, registrations, and charters to operate as the entity or business type identified and is in good standing with all applicable governmental authorities. Dealer shall comply with, and not permit any violation by its agents or employees of, all applicable laws, regulations, and orders of public authorities relating to Dealer's business affairs and the Collateral.

6.2 **Authority.** The undersigned is legally competent, and has been duly authorized by all necessary action, to execute and deliver this Note and consummate all of the transactions contemplated hereby. Dealer

has now and will have at the time of each Advance full right, power, and authority to borrow in the manner and on the terms and conditions set out in this Note, and to grant AFC the lien and security interest granted in this Note without the consent or approval of any third party or public authority.

6.3 **Ownership.** Dealer has now and will have at the time of each Advance good and marketable title to the Purchase Money Inventory, free and clear of all liens, security interests, mortgages, charges, claims, and other encumbrances or interests whatsoever, except the lien and security interest granted under this Note, or except as permitted by AFC in writing or acknowledged by AFC's written notification to such third party advising such third party of AFC's purchase money security interest in the Purchase Money Inventory and the proceeds thereof.

6.4 **Enforceability.** This Note, and any other agreements or documents contemplated herein or executed in connection herewith, constitute valid and binding obligations of the Dealer and all are enforceable in accordance with their respective terms.

6.5 **Litigation.** No legal, arbitration, or administrative proceedings are pending or threatened against Dealer which could reasonably affect the Collateral or which materially and adversely affect the properties, business, prospects, or condition, financial or otherwise, of the Dealer or Dealer's ability to honor its obligations hereunder.

6.6 **Check Representations.** With each and every payment to AFC by Check, Dealer represents and warrants (regardless of whether Dealer is the drawer of the Check), that, at the time of issuance of the Check and at the time such Check may be presented for payment, the account upon which such Check is drawn contains immediately available funds sufficient for payment of that Check and all other Checks issued or outstanding at that time.

6.7 **Retail Installment Contract Representations.** With respect to each Retail Installment Contract: (a) Dealer is the owner thereof; (b) Dealer has made all filings, recordations, and has taken all necessary actions (including registration on a certificate of title) which are required to perfect Dealer's interest with respect to the Collateral therein; (c) such Retail Installment Contract is the result of a bona fide transaction entered into in the ordinary course of Dealer's operations; (d) such Retail Installment Contract is true, valid, genuine, binding, and enforceable in accordance with the written terms thereof; (e) such Retail Installment Contract is the only chattel paper with respect to the subject thereof; (f) such Retail Installment Contract is and will continue to be free from all defenses, setoffs, and counterclaims of any kind; (g) such Retail Installment Contract conforms with all applicable laws; (h) except as to any interest disclosed in writing to AFC, such Retail Installment Contract is free from all security, liens, and/or encumbrances; and (i) the property which is the subject of the Retail Installment Contract has been delivered to the retail purchaser under such Retail Installment Contract.

6.8. **Lot Representation.** All Vehicles located at Dealer's place of business constitute inventory for resale in the ordinary course of Dealer's business unless the Vehicle is plainly marked otherwise. None of the Vehicles are in Dealer's possession pursuant to a consignment or other agreement providing that someone other than Dealer is the Vehicle's owner or has rights in the Vehicle superior to the rights of Dealer or AFC, unless (a) AFC has been notified in writing that such Vehicles are in Dealer's possession and (b) the Vehicles are plainly so marked and identified.

6.9. **Name of Dealer.** Dealer's legal name is precisely the name set forth as such on the last page of this Note.

6.10. **State of Organization.** Dealer's state of incorporation, organization or other business entity registration is the state or jurisdiction set forth as such on the last page of this Note. Upon request, Dealer shall furnish to AFC an official certificate from the

"THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND AN INTEREST THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP. AS AGENT."

appropriate governing authority evidencing the current legal status of Dealer's business organization.

**7.0 EVENT OF DEFAULT.** Each and every one of the following events shall be considered an Event of Default:

7.1 the default in any payment or repayment when due of any of the Purchase Money Inventory Obligations or Obligations, as provided in the Note;

7.2 AFC's deeming itself insecure regarding the Collateral or the possibility of Dealer's default in any payment or repayment of any of the Obligations;

7.3 AFC's receipt of any report indicating that AFC is not prior to all other liens, security interests, mortgages, charges, claims, encumbrances or interests of any kind in the Purchase Money Inventory;

7.4 the default in payment or performance of any debt or obligation of Dealer whether to AFC or to a third party;

7.5 AFC determining, in its sole discretion, that any covenant, warranty, representation, or statement made by Dealer in connection with this Note, related documents, any Advance or otherwise to or for the benefit of AFC has been breached or is false or misleading;

7.6 the loss, theft, damage, destruction, sale (except as permitted by Section 4.0), or encumbrance of the Collateral, or the making of any levy, seizure, attachment, or execution against Dealer or any of its property;

7.7 the inability of Dealer or any guarantor to pay debts as they mature, insolvency of Dealer or any guarantor, appointment of a receiver for Dealer or any guarantor, assignment for the benefit of creditors by Dealer, commencement of any proceeding under any bankruptcy or insolvency law by or against Dealer or any guarantor, or entry of or issuance of any order of attachment, execution, sequestration, or other order in the nature of a writ is levied upon the Collateral;

7.8 the death or incompetency of Dealer if Dealer is an individual or any guarantor, or the death, incompetency, or resignation of a principal stockholder, officer, or manager of Dealer or any guarantor;

7.9 dissolution, merger or consolidation, or transfer of any substantial part of the property of Dealer or of any guarantor; or

7.10 AFC's determination, in its sole discretion, that control contests or other management disputes within or regarding the Dealer threaten or may threaten the timely repayment of the Obligations by Dealer.

**8.0 REMEDIES.**

8.1 Whenever an Event of Default shall exist, or at any time thereafter (such a default not having previously been cured), AFC, at its option and without demand or notice of any kind, may declare the Obligations to be immediately due and payable. Upon such Event of Default, AFC shall have the rights and remedies of a secured party under the UCC with respect to the Collateral, and any other rights or remedies at law, in equity by agreement or otherwise. AFC shall have the right to pursue any of its rights and remedies separately, successively or concurrently, and the exercise of any right or remedy shall not preclude its subsequent exercise at a later time or the exercise of other rights or remedies. Without limiting the foregoing, AFC may (a) notify any or all creditors, account debtors or obligors of Dealer's default or of the security interest of AFC in Dealer's accounts or chattel paper and direct payment of same to AFC; (b) demand, receive, sue for and give receipts or acquittances for any moneys due or to become due on any account receivable, Retail Installment Contract, or under any chattel paper or endorse any item representing any payment on or proceeds of the Collateral; (c) assent to any or all extensions or postponements of time of payment or any other indulgence in release of the Collateral, to the addition or release

of acceptance of partial payments and the settlement, compromise or adjustment of such claims, all in a manner and at times as AFC shall deem advisable; (d) execute and deliver for value all necessary or appropriate bills of sale, documents of title, and other documents and instruments in connection with the management or disposition of the Collateral or any part thereof; (e) hold, store, keep idle, lease, operate, remove, or otherwise use or permit the use of the Collateral or any part of it, for that time and upon those terms as AFC, in its sole discretion, deems it to be in its own best interests; and (f) take possession of the Collateral and sell the same. For all such purposes, AFC may, without prior notice, enter upon the premises on which the Collateral is situated (or is believed to be situated) and either cause the Collateral to remain on, be stored on, or managed at such premises at Dealer's expense, pending sale or other disposition of the Collateral or remove the Collateral to such other place as AFC shall determine. Notwithstanding the foregoing rights, Dealer shall, upon AFC's demand, make the Collateral available to AFC at a place to be designated by AFC which is reasonably convenient to both parties. Dealer hereby consents to the appointment of a receiver by any court of competent jurisdiction without necessity of notice, hearing, or bond.

8.2 **Procedures.** AFC may comply with any provision of this Note and any applicable state or federal law requirements in connection with a disposition of the Collateral, and compliance will not be considered adversely to affect the commercial reasonableness of any sale of Collateral. AFC may sell Collateral without giving any warranties and may specifically disclaim warranties, including warranties of title and the like. AFC shall not be liable or accountable for the failure to seize, collect, realize, sell, or obtain possession or payment of all or any part of the Collateral and shall not be bound to institute proceedings for the purpose of seizing, collecting, realizing, selling or obtaining possession or payment of same or for the purpose of preserving any rights of AFC, Dealer or any other person. AFC shall not have any obligation to take any steps to preserve rights against prior parties to any Collateral, whether or not in AFC's possession, and shall not be liable for failure to do so.

8.3 **No Obligation to Pursue Others.** AFC shall have no obligation to attempt to satisfy the Obligations by collecting them from any other person liable for them, and AFC may release, modify or waive any Collateral provided by any other person to secure any of the Obligations, all without affecting AFC's rights against Dealer. Dealer waives any right it may have to require AFC to pursue any third person for any of the Obligations.

8.4 **Sales on Credit.** If AFC sells any of the Collateral on credit, Dealer will be credited only with payments actually made by the purchaser, received by AFC and applied to the indebtedness of the purchaser. In the event the purchaser fails to pay for the Collateral, AFC may resell the Collateral and Dealer shall be credited with the proceeds of the sale.

8.5 **Notice of Sale.** Dealer agrees that the Vehicles are a type of collateral customarily sold on a recognized market and that AFC therefore has no obligation to notify Dealer, or any other person, prior to their sale. In the event AFC does send notice prior to sale of any Collateral, Dealer agrees that the sending of notice, whether delivered personally, by courier service or by certified or registered mail to any address of Dealer set forth in this Note, of the time and place of any public sale or the time after which any private sale or other intended disposition is to be made, shall be deemed reasonable notice thereof. AFC may, without further notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for the sale, and such sale may be made at any time or place at which it was announced at the sale so adjourned.

8.6 **Action Against Bond.** To the extent not prohibited by law, Dealer authorizes AFC to proceed in an action to collect on or against any bond posted by Dealer with any state or local authorities.

COSMOS Rev. 4/15/01

the parties of this Note that such provision be given force to the fullest possible extent that it is legal, valid and enforceable, that the remainder of this Note shall be construed as if such provision were not contained herein and that the remainder of this Note continue in full force and effect.

9.11 JURISDICTION AND CHOICE OF LAW. THIS NOTE AND ANY AND ALL AGREEMENTS OR AUTHORIZATIONS EXECUTED BY DEALER OR AFC IN CONNECTION HEREWITH SHALL BE GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF INDIANA, AS AMENDED FROM TIME TO TIME, WITHOUT RESORT TO PRINCIPLES OF CONFLICTS OF LAWS. BY EXECUTION OF THIS NOTE, DEALER SUBMITS TO THE PERSONAL JURISDICTION OF THE COURTS OF THE STATE OF INDIANA AND TO VENUE IN THE CIRCUIT AND SUPERIOR COURTS OF MARION COUNTY, INDIANA. ANY ACTION INITIATED BY DEALER AGAINST AFC RELATING TO THIS NOTE SHALL BE FILED AND CONDUCTED SOLELY IN SAID COURTS. AFC MAY BRING ANY SUIT AGAINST DEALER UNDER OR RELATED TO THIS NOTE IN ANY COURT OF COMPETENT JURISDICTION, AND DEALER HEREBY CONSENTS TO AFC'S CHOICE IN FORUM. DEALER FURTHER WAIVES ANY RIGHT WHICH IT MAY HAVE TO REMOVE SUCH LITIGATION OR MATTER TO A FEDERAL COURT OR TO REQUIRE THAT ANY SUCH LITIGATION OR MATTER TAKE PLACE IN A FEDERAL COURT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR AFC ENTERING INTO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

9.12 WAIVER OF JURY TRIAL RIGHTS. DEALER AND AFC EACH ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. THEREFORE, EACH PARTY, AFTER CONSULTING, OR HAVING HAD THE OPPORTUNITY TO CONSULT, WITH COUNSEL OF THEIR CHOICE, HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY, FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN RESPECT TO ANY LITIGATION ARISING OUT OF OR IN CONNECTION WITH THIS NOTE AND RELATED AGREEMENT(S), INSTRUMENTS OR TRANSACTIONS, OR ANY ASPECT OF THE PAST, PRESENT, OR FUTURE RELATIONSHIP OF THE PARTIES. THIS PROVISION IS A MATERIAL INDUCEMENT FOR AFC ENTERING INTO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

9.13 Title Processing Fees. If AFC determines that it is necessary or desirable to transfer or convert title or obtain a new or replacement title for any Vehicle, Dealer agrees to pay AFC a title transfer or processing fee not to exceed $100 for each title processed, in addition to all of AFC's expenses and costs incidental thereto, which shall include, but are not limited to, fees and out-of-pocket expenses incurred by attorneys (including paralegals and similar persons) and any filing fees or taxes.

9.14 Attorneys' Fees Expenses and Costs. In addition to all other amounts payable hereunder by Dealer, Dealer agrees to reimburse AFC on demand for any and all attorneys' (including paralegals' and similar persons') fees (not less than 15% of the outstanding Obligations where not prohibited by law), accountants' fees, appraisers' fees, and all expenses and costs incurred in collecting or enforcing payment of the Obligations hereunder or in curing any default, including without limitation those fees and costs incurred (a) with or without suit; (b) in any appeal; (c) in any bankruptcy, insolvency or receivership proceeding; and (d) in any post-judgment collection proceedings, plus interest at the rate provided herein.

Dealer's Name and Dealer's Place(s) of Business:

AUTO POINT, LIMITED

9130 OLSON MEMORIAL HWY
MINNEAPOLIS, MN 55427

WHEREFORE, the parties have, by their duly authorized representatives, executed this Note on the Ninth day of September, 2002.

Dealer: AUTO POINT, LIMITED

By: _____ President

By: _____

By: _____

By: _____

Automotive Finance Corporation

By: _____
An AFC Officer
To be executed at AFC corporate office

"THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND AN INTEREST THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP. AS AGENT."

COSMOS Rev. 4/15/01

"THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND AN INTEREST THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP. AS AGENT."

8.7  No Marshalling.  AFC shall have no obligation to marshal any assets in favor of Dealer, or against or in payment of the Note, any Obligations or any other obligation owed to AFC by Dealer or any other person.

8.8  Right of Set-Off.  Upon the occurrence and during the continuance of an Event of Default, AFC is authorized at any time and from time to time, without notice to Dealer, to set-off and apply, directly or through any of AFC's affiliates, any and all deposits (whether general or special, time or demand, provisional or final, or otherwise) and other assets and properties at any time held in the possession, custody or control of AFC or its affiliates, and any indebtedness at any time owing by AFC or its affiliates to or for the credit, account or benefit of Dealer, against any and all of Dealer's Obligations.

9.0  GENERAL.

9.1  Indemnification.  Dealer shall indemnify and hold AFC harmless from and against any and all liabilities, loss, damage, costs, or expenses of whatever kind or nature relating to claims of third parties arising out of or in any way connected to this Note or Dealer's business affairs including, without limitation, attorneys' fees and expenses incurred both in the defense of any action against AFC and in any action to enforce these indemnity rights as against the Dealer.

9.2  No Partnership; Joint Venture; Dealer's Business Affairs.  Notwithstanding anything to the contrary herein contained or implied, AFC, by this Note or by any action pursuant hereto, shall not be deemed to be a partner or joint venture of Dealer.  Dealer furthermore agrees that notwithstanding the conditions of lending herein, the purchase or sale of Vehicles or Equipment by Dealer is in the ordinary course and, prior to an Event of Default, at the discretion and subject to the business judgment of Dealer.  AFC has no responsibility or liability of any kind with regard to the quantity, quality, condition, purchase price, or marketability of any item of Purchase Money Inventory.  AFC is not a party to any loss or gain in the sale of any Purchase Money Inventory sold by Dealer.

9.3  Expenses.  Dealer agrees to pay in the ordinary course all AFC's expenses and costs incidental to the financing provided for under this Note.  Such costs shall include, but are not limited to, fees and out-of-pocket expenses incurred by AFC or its counsel (including paralegals and similar persons) and any filing fees, stamp taxes, insurance or other charges associated with the creation, perfection, or maintenance of the security interest granted herein.  Dealer agrees that if it fails or refuses to pay any taxes or assessments relating to the Collateral or maintain proper insurance coverage for the Collateral, AFC may, but has no obligation to, pay said taxes or assessments and purchase a policy or policies of insurance and may treat amounts so expended as additional Obligations.  Any amount so paid or advanced by AFC, plus related costs, shall be repaid by Dealer on demand and shall bear interest at the highest rate permitted by law from the date of such payment or advance.

9.4  Notices.  All notices, requests, or other communications by Dealer required by, permitted under, or relating to this Note shall be in writing.  Any notice shall be effective (a) if delivered personally (or by courier) with signed receipt therefor, or (b) three days after dispatch, if delivered via certified or registered U.S. Mail, postage prepaid and addressed as follows:

If intended for AFC
Automotive Finance Corporation
310 East 96th Street, Suite 300
Indianapolis, IN 46240

If intended for Dealer
AUTO POINT, LIMITED
9130 OLSON MEMORIAL HWY
MINNEAPOLIS, MN 55427

All such notices shall be deemed reasonably and promptly given if the effective date thereof is at least five days prior to the event with respect to which notice is given.

9.5  Merger, Modification; Headings; Waiver.  This Note and the documents contemplated hereby are intended by the parties as an amendment and restatement of any prior Promissory Note and Security Agreement or agreements with regard to the subject matter hereof.  Notwithstanding the foregoing, this Note and the documents contemplated hereby contain the entire agreement of the parties with regard to the subject matter hereof, and shall be binding upon and inure to the benefit of the successors and assigns of the parties; however, no obligation or rights of Dealer shall be assignable.  Dealer authorized AFC to alter, amend or modify the Terms and Conditions of this Note at any time by posting a copy of such altered, amended or modified Terms and Conditions in a prominent location at AFC offices accessible to Dealer or at another physical or electronic location accessible to Dealer or the general public.  Any request for an Advance by Dealer and subsequent Advance by AFC pursuant to Sections 2.1, 2.2 or 2.3 shall constitute the assent of the parties to the Terms and Conditions in effect at that time.  The provisions of this Note may not be altered, amended, or modified by Dealer except in a writing signed by both parties.  The parties acknowledge that the headings herein are for convenience only and shall not be considered in the interpretation of this Note.

9.6  Usury.  Any provisions of this Note to the contrary notwithstanding, at no time shall Dealer be obligated to pay interest at a rate which could subject AFC to either civil or criminal liability as a result of interest being in excess of the maximum rate Dealer is permitted by law to contract or agree to pay.  In such circumstances, the rate of interest hereunder shall be deemed to be immediately reduced to such maximum rate, and such interest and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Obligations as of the date such payment was made.  Any such excess shall be held by AFC for Dealer's benefit without interest and shall be subject to setoff by AFC.

9.7  No Waiver.  No delay or omission by AFC to exercise any right or remedy shall (a) impair any right or remedy, (b) waive any default or operate as an acquiescence to any Event of Default, or (c) affect any subsequent default, right or remedy of the same or of a different nature.

9.8  Demand Nature of Credit Facility.  Dealer acknowledges and agrees that the financing evidenced by this Note is payable upon demand.  Nothing in this Note is intended to nor shall be deemed to change the demand nature of this Note, including, without limitation, any reference to Curtailment Dates, to Periods, or otherwise.  Dealer acknowledges and agrees that AFC, at any time, without notice and with or without reason, may demand that this Obligation be immediately paid in full.  The Dealer acknowledges that demand may be made by AFC even if the Dealer is in compliance with each and every term of this Note.

9.9  Signature.  AFC and Dealer expressly agree that AFC may, at AFC's option, execute this Note and the documents contemplated hereby by way of a signature stamp or other authorized facsimile signature of an AFC officer.  AFC and Dealer expressly agree that except as authorized under Section 2.10 or the attached Power of Attorney, Dealer may only execute this Note and the documents contemplated hereby by way of an original signature and not by way of a facsimile thereof.

9.10  Enforcement.  AFC and Dealer intend and believe that each provision in this Note complies with all applicable ordinances, laws, statutes and judicial and administrative decisions; however, if any provision in this Note is found by a court of law to be in violation of any applicable ordinances, laws, statutes, judicial or administrative decisions, or public policy, then it is the intent of

COSMOS Rev. 4/15/01

TERM SHEET FOR
PROMISSORY NOTE AND SECURITY AGREEMENT

Dealer: **AUTO POINT, LIMITED**

Date of Original Note: FEB 09, 2001

The following terms, as defined in the Demand Promissory Note and Security Agreement, shall apply effective immediately:

<u>Floorplan Fee</u>: The Floorplan Fee shall be:
$75.00.
Notwithstanding the foregoing, for each extension of the Curtailment Date, the Floorplan Fee shall be $75.

<u>Interest</u>: Interest shall accrue on all Advances under this Note at a variable rate, adjusted each business day, based upon the most recent prime rate published in <u>The Wall Street Journal</u> plus:
4.5% per annum.

<u>Number of Curtailment Date Extensions</u>: The Number of Curtailment Date Extensions shall be limited to:
1 time.  Notwithstanding the definition of Period below, the Period for each such extension shall be equal to 30 days.

<u>Period</u>: The Period shall be:
30 days.

Executed by the undersigned duly authorized representatives effective as of the Ninth day of September, 2002.

Dealer: AUTO POINT, LIMITED

By:

By:

By:

By:

Automotive Finance Corporation

By: _____
An AFC Officer
To be executed at AFC corporate office

"THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND AN INTEREST THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP. AS AGENT."

**EXHIBIT A**

"THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND AN INTEREST
THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP. AS AGENT."

## POWER OF ATTORNEY

**KNOW ALL BY THESE PRESENTS:**

That pursuant to Ind. Code § 30-5-1-1 et.seq. and in accordance with the Demand Promissory Note and Security Agreement between Automotive Finance Corporation ("AFC") and **AUTO POINT, LIMITED** ("Dealer"), to which reference is made for the meaning of all capitalized terms used herein, a power of attorney is hereby conferred by the undersigned on his or her behalf and on behalf of Dealer upon AFC, an Indiana corporation, the principal office of which is located at 310 East 96th Street, Suite 300, Indianapolis, Indiana 46240 to:

(a) act with general authority with respect to all personal property of the undersigned or Dealer and transactions involving or relating to the same;

(b) act on behalf of the undersigned and Dealer to assign, reassign, or obtain titles in connection with transactions involving Purchase Money Inventory, Collateral and other property of the undersigned or Dealer;

(c) act on behalf of the undersigned and Dealer to prepare, sign, endorse, execute and deliver documents including, but not limited to financing statements, notes, checks, drafts, and titles in connection with transactions involving Purchase Money Inventory, Collateral and other property of the undersigned or Dealer;

(d) act with general authority with respect to claims and litigation of or relating to Purchase Money Inventory, Collateral, and other property of the undersigned or Dealer;

(e) act with general authority with respect to delegating authority;

(f) act with general authority with respect to insurance, and accounts or transactions with banks and other financial institutions, of or relating to Purchase Money Inventory, Collateral, and other property of the undersigned or Dealer; and

(g) act with general authority regarding all other matters which AFC may, in its sole discretion, deem expedient, reasonable, or necessary in the discharge of the authority hereby conferred -- all as if done by the undersigned or Dealer directly.

Dealer shall indemnify, defend and hold harmless AFC, its affiliates, subsidiaries, officers, directors, employees, representatives, successors, and assigns from and against any and all loss, damage, liability, claims, cause of action, and expenses of whatever kind, arising from the exercise of authority hereunder. The liability of AFC and/or any person to whom it delegates authority hereunder, to the undersigned, Dealer or any third person shall be limited to acts in bad faith. This power of attorney shall be irrevocable until such time as each and every Obligation of the undersigned and Dealer to AFC has been satisfied in full. The revocation or termination hereof shall be ineffective unless and until actual notice or knowledge of such revocation or termination shall have been received by the parties acting under this power of attorney. The undersigned represents and warrants that he/she is a duly authorized agent of Dealer and by execution of this Power of Attorney, Dealer is lawfully bound to and obligated by the terms hereof. This power of attorney shall be governed by the substantive laws of the State of Indiana without resort to principles of conflicts of law.

AUTO POINT, LIMITED

By: _____ president          By: _____

By: _____          By: _____

By: _____          By: _____

By: _____

STATE OF _MN_          COUNTY OF _Hennepin_

Before me the undersigned, a Notary Public in and for the said County and State, personally appeared the above-referred individual(s) who acknowledged the execution of the foregoing Power of Attorney this _07_ of _October_, _2002_.

_Julie Rambow_          My Commission Expires: _1-31-2005_
(Notary Public Signature)

_JULIE L. RAMBOW._          My County of Residence: _Hennepin_

(Printed Name)

JULIE L. RAMBOW
NOTARY PUBLIC-MINNESOTA
MY COMMISSION EXPIRES 1-31-2005

**EXHIBIT B**

COSMOS Rev. 4/15/01

## AGGREGATE ADVANCE LIMIT AMENDMENT
## TO PROMISSORY NOTE AND SECURITY AGREEMENT

IN ACCORDANCE with the Promissory Note and Security Agreement ("Note") between Automotive Finance Corporation ("AFC") and the undersigned, said Note incorporated herein by reference, and in consideration of credit and/or services given or to be given to the undersigned by AFC under the Note, the undersigned and AFC expressly agree as follows:

1) The Aggregate Advance Limit under the Note shall be Two Hundred Thousand Dollars ($200000).

2) The Unconditional Guarantor(s), hereinafter collectively referred to as "Guarantor", reaffirms the terms and obligations of Guarantor's Unconditional Guaranty with respect to the Note including but not limited to the increase in the Aggregate Advance Limit as set out above.

Executed by the undersigned duly authorized representatives effective as of the Twenty-Eighth day of June, 2005.

Dealership: AUTO POINT LIMITED,

By: _____ President
MICHAEL POVOLOTSKY , PRESIDENT

By: _____

By: _____

By: _____

Automotive Finance Corporation

By: _____
An AFC Officer
To be executed at AFC corporate office

**Dealer #: 108584  Contract #: 1842232**
**Branch #: 91**

Unconditional Guarantor

By: _____
MICHAEL POVOLOTSKY

By: _____

By: _____

By: _____

STATE OF *Minnesota* , COUNTY OF *Hennepin*

Before me the undersigned, a Notary Public in and for the said County and State, personally appeared the above-referred individual(s) who acknowledged the execution of the foregoing Aggregate Advance Limit Amendment to Promissory Note and Security Agreement this 6th of July 2005.

_____
(Notary Public Signature)

My Commission Expires: *1-31-2016*

*David A. Lusk*
(Printed Name)

My County of Residence: *Anoka*

DAVID A. LUSK
NOTARY PUBLIC – MINNESOTA
My Commission Expires Jan. 31, 2010

Page 1 of 1

THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND AN
INTEREST THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP. AS AGENT.

## TERM SHEET FOR
## PROMISSORY NOTE AND SECURITY AGREEMENT

Dealer: **AUTO POINT, LIMITED,**

Dealer #: 108584  Contract #: 1842232  Branch #: 91

The following terms, as defined in the Promissory Note and Security Agreement, shall apply effective immediately:

Floorplan Fee:  The Floorplan Fee shall be:
$65.00.
Notwithstanding the foregoing, for each extension of the Curtailment Date, the Floorplan Fee shall be $30.

Interest:  Interest shall accrue on all Advances under this Note at a variable rate, adjusted each business day, based upon the most recent prime rate published in The Wall Street Journal plus:
3.0% per annum, compounded daily.

Number of Curtailment Date Extensions: The Number of Curtailment Date Extensions shall be limited to:
1 time.  Notwithstanding the definition of Period below, the Period for each such extension shall be equal to 30 days.

Period:  The Period shall be:
60 days.

Executed by the undersigned duly authorized representatives effective as of the Twenty-Second day of July, 2005.

Dealer: AUTO POINT, LIMITED,

By: _____ President
MICHAEL POVOLOTSKY , PRESIDENT

By: _____

By: _____

By: _____

Automotive Finance Corporation

By: _____
An AFC Officer
To be executed at AFC corporate office

USA Rev. 2/7/05

THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND AN
INTEREST THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP. AS AGENT .

## AGGREGATE ADVANCE LIMIT AMENDMENT
## TO PROMISSORY NOTE AND SECURITY AGREEMENT

IN ACCORDANCE with the Promissory Note and Security Agreement ("Note") between First Bank of White, a federally-insured commercial bank organized under the laws of the state of South Dakota ("LENDER") and the undersigned, said Note incorporated herein by reference, and in consideration of credit and/or services given or to be given to the undersigned by LENDER under the Note, the undersigned and LENDER expressly agree as follows:

1) The Aggregate Advance Limit as defined in the Note shall be Five Hundred  Thousand Dollars ($500000).

2) The Unconditional Guarantor(s), hereinafter collectively referred to as "Guarantor", reaffirms the terms and obligations of Guarantor's Unconditional Guaranty with respect to the Note including but not limited to the increase in the Aggregate Advance Limit as set out above.

Executed by the undersigned duly authorized representatives effective as of the Thirteenth day of March, 2007.

| Dealership: AUTO POINT, LIMITED | Unconditional Guarantor: | First Bank of White ("LENDER") |
|---|---|---|
| | | By: Automotive Finance Corporation, as agent for First Bank of White |
| | | By: _Cameron Hitchcock, President_ |
| By: _Michael Povolotsky_ President | By: _Michael Povolotsky_ | |
| MICHAEL POVOLOTSKY , PRESIDENT | MICHAEL POVOLOTSKY | |
| By: | By: _Irene Povolotsky_ | |
| | IRENE POVOLOTSKY | |
| By: | By: | Dealer #: 108584 |
| By: | By: | Contract #: 1842232 |
| | | Branch #: 91 |

STATE OF _Minnesota_, COUNTY OF _Hennepin_

Before me the undersigned, a Notary Public in and for the said County and State, personally appeared the above-referred individual(s) who acknowledged the execution of the foregoing Aggregate Advance Limit Amendment to Promissory Note and Security Agreement this _29_ of _March_, _2007_

_Amy B Weber_
(Notary Public Signature)

My Commission Expires: _1-31-2012_

_Amy B. Weber_
(Printed Name)

My County of Residence: _Hennepin_

Page 1 of 1

USA Rev. 1/18/07

THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION
INTEREST THEREIN HAS BEEN GRANTED TO HARRIS NESBITT CORP.

AMY BETH WEBER
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 1-31-2012

# STATE OF MINNESOTA
# UCC-1 FINANCING STATEMENT

For
Filing
Officer

2306 0921

01 MAR 12 - AM 8:08

SEC OF STATE
MINNESOTA

This statement is presented for filing pursuant to Minnesota Uniform Commercial Code
Minnesota Statutes Chapter 336.9-402      (Type in Black Ink)

| 1. Individual Debtor - Last Name | First Name | Middle I. |
|---|---|---|
| Social Security #      Mailing Address | | |
| City | State | Zip Code |

| 2. Individual Debtor - Last Name | First Name | Middle I. |
|---|---|---|
| Social Security #      Mailing Address | | |
| City | State | Zip Code |

3. Business Debtor - Name
AUTOMOTIVE CONSULTANTS GROUP INC

| Fed. ID #<br>41-1507344 | Mailing Address<br>6009 WAYZATA BLVD | |
|---|---|---|
| City<br>MINNEAPOLIS | State<br>MN | Zip Code<br>55416 |

| 4. Secured Party Name<br>AUTOMOTIVE FINANCE CORPORATION | 5. Assignee of Secured Party |
|---|---|
| Mailing Address<br>TWO PARKWOOD CROSSING, 310 E 96TH STREET #300 | Mailing Address |

| City<br>INDIANAPOLIS | State<br>IN | Zip Code<br>46240 | City | State | Zip Code |
|---|---|---|---|---|---|

6. This financing statement covers the following types or items of property. (If crops are covered describe the real estate and list the name of record owner.)
All now owned or hereafter acquired inventory including but not limited to inventory of motor
vehicles, equipment, accounts, chattel paper, general intangibles and all additions,
accessions, accessories, replacements and proceeds thereof.

☐ Debtor is a transmitting utility
as defined by Minnesota Statutes Chapter 336.9-105

| RETURN ACKNOWLEDGEMENT COPY TO: (name and address) | AUTOMOTIVE CONSULTANTS GROUP INC |
|---|---|
| AUTOMOTIVE FINANCE CORPORATION<br>TWO PARKWOOD CROSSING<br>310 E 96TH STREET #300<br>INDIANAPOLIS, IN 46240 | Debtor's Signature<br>(Required in Most Cases see instructions)<br><br>Sharon Dale UCC Clerk<br>Debtor's Signature<br>AUTOMOTIVE FINANCE CORP(108584/18)SH<br>Secured Party's Signature |

Please do not type outside the bracketed area.

(06920819 Rev. 5/93) Standard Form Approved by Secretary of State

Printed by UCC Control - LibraSoft, Inc.
551 W. Cordova #708, Santa Fe, NM 87501

(4) SECURED PARTY COPY



EXHIBIT
B

Filing NO: 2002261860
Filing Date: 2001/12/31
Filing Time: 5:00 PM
State of Minnesota
Processing Office: Secretary of State
Filed by: etici01

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

```
Automotive Finance Corporation
Two Parkwood Crossing
310 East 96th Street, Suite 300
Indianapolis, IN 46240
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. THIS FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 2306192    1-12-01 | |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☒ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☒ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| AUTOMOTIVE CONSULTANTS GROUP, INC. | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| AUTO POINT, LIMITED | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 9130 OLSON MEMORIAL HIGHWAY | MINNEAPOLIS | MN | 55427 | |

| 7d. TAX ID #   SSN OR EIN | ADD'L INFO RE: ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION   CORPORATION | 7f. JURISDICTION OF ORGANIZATION   MN | 7g. ORGANIZATIONAL ID #, if any | ☒ NONE |
|---|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Automotive Finance Corporation | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

10. OPTIONAL FILER REFERENCE DATA
(168584/18)MG

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

FILED

Case Type: Contract

STATE OF MINNESOTA          2010 APR -9 AM 11: 25          DISTRICT COURT

COUNTY OF HENNEPIN          BY _____ DEPUTY          FOURTH JUDICIAL DISTRICT
                           HENN CO. DISTRICT
                           COURT ADMINISTRATOR

---

AUTOMOTIVE FINANCE
CORPORATION ("AFC"), an Indiana
corporation,

                    Plaintiff,                    Court File No. 27 CV 10-7018

vs.                                                           **ORDER**

AUTO POINT LIMITED,
a Minnesota corporation,
MICHAEL POVOLOTSKY, an individual,
and IRENE POVOLOTSKY

                    Defendants.

---

This matter is before the Court on the motion of Plaintiff Automotive Finance

Corporation ("AFC") for recovery of property pursuant to Minn. Stat. § 565.21, *et. seq.*, and for

a temporary restraining order pursuant to Minn. R. Civ. P. 65.01. AFC seeks to replevy certain

vehicles it financed and as more specifically described in the Affidavit of Lisa Miko filed in

support of the motion.

The Court held a hearing on the motion on ___April 9___, 2010. Appearances

were noted on the record. ~~The Ds have not been served~~ Based upon the record, the affidavit and memorandum submitted by

AFC, and all arguments of counsel, the Court makes the following:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.  On or about September 9, 2002, AFC, as lender, and Auto Point Limited ("Auto
    Point"), as borrower, entered into a Demand Promissory Note and Security
    Agreement (the "Security Agreement'). Pursuant to the Security Agreement,
    AFC initially loaned Auto Point the sum of $150,000.00 to provide floor plan
    financing for the purchase of certain vehicles (the "Vehicles") in which Auto



EXHIBIT
C

Point granted AFC a first and prior security interest. A true and correct copy of the Security Agreement is attached to the Verified Complaint.

2.     On June 28, 2005, Auto Point and AFC entered into an Aggregate Advance Limit Amendment to Promissory Note and Security Agreement (the "Security Agreement Amendment") in which the lending limit under the Security Agreement was increased to $200.000.00. A true and correct copy of the Security Agreement Amendment is attached to the Verified Complaint.

3.     On March 13, 2007, Auto Point and AFC entered into an Aggregate Advance Limit Amendment to Promissory Note and Security Agreement (the "Second Security Agreement Amendment") in which the lending limit under the Security Agreement was increased to $500.000.00. A true and correct copy of the Second Security Agreement Amendment is attached to the Verified Complaint.

4.     Auto Point Limited granted AFC a security interest and purchase money security interest in the Purchase Money Inventory and all titles to any Vehicles purchase by using AFC's floor plan financing and all proceeds of the foregoing (collectively the "Collateral").

5.     Auto Point agreed under Section 4.0 of the Security Agreement that its right to sell Collateral was conditioned upon Auto Point holding "the amount received from the disposition of Inventory in Trust for the benefit of AFC and Dealer [Auto Point] shall pay to AFC, in accordance with 2.6, an amount equal to the unpaid balance of the Purchase Money Inventory Obligations [the outstanding balance of money loaned to Auto Point]. . ." Verified Complaint, Exhibit A, ¶ 4.

6.     Pursuant to the Security Agreement, Auto Point also granted AFC a security interest and purchase money security interest in the Purchase Money Inventory and all titles to any Vehicles purchase by using AFC's floor plan financing and all proceeds of the sales of the Vehicles (collectively, the "Collateral").

7.     AFC perfected its security interest in the Collateral granted by Auto Point by filing a Financing Statement with the Minnesota Secretary of State as Document No. 2306192 on March 12, 2001. The Financing Statement is attached to the Verified Complaint.

8.     AFC's security interest in the Collateral is prior and superior to the security interest, if any, of any other person.

9.     To induce AFC to extend financing to Auto Point, Defendant Michael Povolotsky executed an Unconditional and Continuing Guaranty of all indebtedness, obligations and liabilities of Auto Point owing at any time to AFC (the "First Guaranty"). The First Guaranty is attached to the Verified Complaint.

10.     On March 13, 2007, Defendants Michael Povolotsky and Irene Povolotsky (the "Guarantors") executed an Unconditional Continuing Guaranty in favor of First Bank of White (the "Second Guaranty"; together with the First Guaranty, are

collectively referred to herein as the "Guaranties"). AFC is the successor-in-interest to First Bank of White's interest in the Second Guaranty. The Second Guaranty is attached to the Verified Complaint.

11.     Among other potential sales, Auto Point has sold the following Vehicles without remitting payment to AFC:

| Year | Model | VIN | Stock Num |
|------|-------|-----|-----------|
| 2004 | Landcruiser | 054902 | 527 |
| 2006 | IS 250 | 023441 | 515 |

12.     Additionally, AFC extended financing to Auto Point to purchase the following Vehicles, which based on a site visit by an AFC representative on March 31, 2010, no longer appear to be on Auto Point's lot:

| Year | Model | VIN | Stock Num |
|------|-------|-----|-----------|
| 2006 | E Class | 191229 | 514 |
| 2006 | S Class | 471867 | 521 |
| 2002 | 430 | 086195 | 522 |
| 2002 | X5 | P38918 | 524 |
| 2005 | GX470 | 079652 | 525 |
| 2008 | LR2 | 034159 | 526 |

13.     Pursuant to the Security Agreement, Auto Point was required to make certain principal payments (referred to as Curtailments) which AFC invoiced to Auto Point for payment. Auto Point has failed to make the principal payments under the Security Agreement.

14.     The inability of Auto Point to satisfy its arrearages to AFC indicates that Defendants likely would be unable to pay any substantial money judgment entered against them.

15.     Auto Point has sold Vehicles without remitting payment to AFC, as Auto Point was obligated to due under the Security Agreement, has failed to assemble and return to AFC any of the Collateral and has failed to make any payment for the out-of-trust sales. For these and other reasons, Auto Point is in breach of the Security Agreement.

16.     Auto Point is in default of its obligations under the terms of the Security Agreement and the Amendments to the Security Agreements.

17.     Among other remedies available to AFC under the Security Agreement is the immediate right to repossess the Collateral as well as accelerate all indebtedness of Auto Point to AFC under the Security Agreement. Verified Complaint, Exhibit A, ¶ 8.0.

18. Auto Point has violated the terms of the Security Agreement by improperly diverting all proceeds from the sale of Vehicles to its own use and benefit and without remitting the sale proceeds to AFC.

19. Given the Auto Point's diversion of AFC's Collateral and Auto Point's deteriorating financial condition, AFC is concerned that Auto Point continues to divert AFC's Collateral for its own use and benefit, rather than to the payment of Auto Point's secured indebtedness to AFC.

20. Pursuant to the Security Agreement, without limitation, upon the occurrence of an event of default, AFC is permitted to enter upon and into and take possession of all or such part or part of the Vehicles and Collateral held by Auto Point to permit and enable AFC to store, lease, sell or otherwise dispose of or collect all or any part of the Collateral.

21. The occurrence of defaults under the Security Agreement entitles AFC to immediate possession of the Collateral pursuant to the Security Agreement which provides that AFC may enter upon and into and take possession of all or such part or part of the Vehicles and Collateral held by Auto Point to permit and enable AFC to store, lease, sell or otherwise dispose of or collect all or any part of the Collateral.

22. In addition, the Security Agreement permits AFC to exercise any and all other rights and remedies available to it by law or by agreement, including rights and remedies under the Uniform Commercial Code as adopted in the relevant jurisdiction or any other applicable law, or under the Security Agreement and, in connection therewith, AFC may require the Guarantors to assemble the Collateral and make it available to AFC at a place to be designated by AFC.

23. Minn. Stat. §336.9-609 permits AFC, as a secured party, to "take possession of the collateral" and "require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties."

24. The Court finds AFC is likely to succeed on the merits of its claims against the Defendants for injunctive relief because Defendants are in breach of the Security Agreement, the Amendments thereto, the Guaranties, and have improperly disposed of the Collateral.

25. AFC will suffer irreparable injury for which no adequate remedy at law exists unless Defendants and other persons and firms having knowledge of this injunction are: (a) enjoined from continuing to use and possess the Collateral and Vehicles; (b) prevented from selling or further disposing the Collateral and Vehicles; (c) ordered to advise ATF of the precise location of each and every item of the Collateral and Vehicles; and (d) ordered to surrender the Collateral and Vehicles to AFC.

## ORDER

26. Plaintiff's motion for replevin of the Collateral described in the Affidavit of Lisa Miko and for a temporary restraining order is **GRANTED**.

27. Plaintiff is entitled to the immediate possession of the Collateral described in the Affidavit of Lisa Miko.

28. Defendants and their agents and employees shall immediately disclose the location of the Collateral to Plaintiff and deliver the Collateral to Plaintiff. In the event any of the Collateral is not in the possession, custody, or control of Defendants and the location of the Collateral is not disclosed to Plaintiffs counsel within two (2) days of the date of this Order, then Defendants must appear no later than the next business day after the fourth day after the date of this Order at the law offices of Fabyanske, Westra, Hart & Thomson, P.A., 800 LaSalle Avenue, Suite 1900, Minneapolis, Minnesota, 55402 to give testimony as to the location of any of the Collateral not in the possession, custody, or control of the Defendants. If Defendants fail to deliver any of the Collateral to Plaintiff or fail to disclose the location of any of the Collateral as ordered herein, Defendants shall appear before this Court no later than seven business days after the date of this Order to show cause why an order should not be entered finding Defendants in contempt for failure to deliver the Collateral and to disclose its location. <u>FAILURE TO APPEAR PERSONALLY BEFORE THE COURT AS ORDERED AND COMMANDED HEREIN MAYBE GROUNDS FOR HOLDING DEFENDANTS IN CONTEMPT OF COURT AND A BENCH WARRANT MAYBE ISSUED TO COMPEL YOUR APPEARANCE.</u>

29. Upon filing a bond in the amount of $ _155,000_ approved by the Court and conditioned for the return of the Collateral to Defendants, if a return be adjudged, the Sheriff of any county in the State of Minnesota where the Collateral may be situated, or any duly authorized representative of the same, is directed to seize the Collateral by any and all legal means. If the Collateral, or any of it, is concealed in a building or elsewhere, and a demand is made by the Sheriff for its delivery is refused or there is no response, then the Sheriff shall cause the building or other enclosure, including Auto Point's place of business at 9130 Memorial Olson Highway, Minneapolis, Minnesota, 55427, the Guarantors' residences at 772 Fairfield Circle, Hopkins, Minnesota 55305, and any other places of business of Defendants, to be broken open and shall take the Collateral therefrom or, alternatively, shall secure the building or other enclosure by any reasonable means including, without limitation, changing the locks of the building or other enclosure.

30. Defendants may regain possession of the Collateral seized by the Sheriff within fourteen (14) days of the seizure, upon the filing of a bond approved by the Court on the condition that the Collateral shall be delivered to Plaintiff, if delivery be adjudged, and for the payment to Plaintiff of any sum adjudged against Defendants. The bond shall be in the amount of $ _155,000_ , which is one and

one-quarter (1-1/4) times Plaintiff's good faith approximation of the maximum fair market value of the Collateral. The bond shall be approved and filed with this Court no later than fourteen (14) days following the day of the seizure. The cost of regaining possession of the Collateral from Plaintiff shall be borne by Defendants. If this bond is not filed by Defendants by the time stated above, then Plaintiff shall be free to dispose of the Collateral seized pursuant to this Order. If a bond is filed by Defendants within the time limit set forth above, then a hearing shall be held as soon as practicable before this Court. The hearing shall be for the purpose of determining whether Plaintiff has a right to possession of the Collateral and, if so, the value of the Collateral to which it has a right.

31.   Except as specifically set forth herein, Defendants are hereby enjoined and restrained from taking any action concerning the Collateral including, without limitation, the sale, transfer, diversion or other disposition of any items of the Collateral. In addition, Defendants are hereby enjoined and restrained from taking any action that would interfere in any way with the seizure of the Collateral.

32.   AFC shall immediately inform all third-parties who may be in possession of any of the Collateral of the terms of this order and shall request that such third-parties allow AFC to recover possession of such Collateral.

33. April 14,2016 at 9:00AM CR.1659 17CCC hearing

**BY THE COURT:**

Dated: April ___9___, 2010

_____

Judge of Hennepin County District Court

Gary Larson

STATE OF MINNESOTA, COUNTY OF HENNEPIN
I hereby certify this ___10___ page document to be a true and correct copy of the original on file and of record in my office.
District Court Administrator

By_____Deputy

STATE OF MINNESOTA

FILED

2010 APR 14  AM 9: 29

BY_____DEPUTY
HENN CO DISTRICT
COURT ADMINISTRATOR

Case Type:  Contract
DISTRICT COURT

COUNTY OF HENNEPIN

FOURTH JUDICIAL DISTRICT

AUTOMOTIVE FINANCE CORPORATION
("AFC"), an Indiana corporation,

Plaintiff,

Court File No. 27-CV-10-7018

vs.

AUTO POINT LIMITED, a Minnesota corporation,
MICHAEL POVOLOTSKY, an individual, and
IRENE POVOLOTSKY

Defendants.

Bond No.  CMS253779

## REPLEVIN BOND

We, Automotive Finance Corporation, as Principal, and  RLI Insurance
Company_____, as Surety, are bound to Auto Point Limited, Michael Povolotsky and
Irene Povolotsky in the sum of $155,000.00, for the payment of which we bind ourselves, our
heirs, personal representatives, successors and assigns, jointly and severally.

THE CONDITION OF THIS BOND is that if Plaintiff shall prosecute this action to
effect and without delay, and if Defendants recover judgment against Plaintiff in this action,
Plaintiff shall return the property replevied, if return of it is adjudged, and shall pay Defendants
all money recovered against Plaintiff by Defendants in this action, then this bond is void;
otherwise it remains in force

SIGNED AND SEALED on April  12 , 2010.

PRINCIPAL:
**AUTOMOTIVE FINANCE CORPORATION**

By: _____
Its: _____

SURETY: RLI Insurance Company
[      **NAME OF SURETY**      ]

By: _____
Its: Pam J. Klasen, Attorney-in-Fact

EXHIBIT
D

State of    **ILLINOIS**                            } ss:

County of    **Cook**

On  April 12, 2010           ,before me, a Notary Public to and for said County and State, residing therein, duly
commissioned and sworn, personally appeared    **Pam J. Klasen**

known to me to be Attorney-in-Fact of    **RLI Insurance Company**
the corporation described in and that executed the within and foregoing instrument, and known to me to be the person who
executed the said instrument in behalf of the said corporation, and be duly acknowledged to me that such corporation
executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the day and year stated in this
certificate above.

My Commission Expires __ 05/23/13 ___

OFFICIAL SEAL
SUSAN K. SYMONS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/23/2013

Notary Public



**RLI**®

RLI Surety
P.O. Box 3967 | Peoria, IL 61612-3967
Phone: (800)645-2402 | Fax: (309)689-2036
www.rlicorp.com

# POWER OF ATTORNEY
## RLI Insurance Company

*Know All Men by These Presents:*

That this Power of Attorney is not valid or in effect unless attached to the bond which it authorizes executed, but may be detached by the approving officer if desired.

That **RLI Insurance Company**, an Illinois corporation, does hereby make, constitute and appoint:

E. Thomas Thilman, Peter Kunz, John Atkinson, Art Pedraza, Susan K. Symons, Pam J. Klasen, John K. Johnson, Adrienne C. Stevenson, Candace T. Stevenson jointly or severally.

in the City of _____Chicago_____, State of _____Illinois_____ its true and lawful Agent and Attorney in Fact, with full power and authority hereby conferred, to sign, execute, acknowledge and deliver for and on its behalf as Surety, the following described bond.

**Any and all bonds provided the bond penalty does not exceed Twenty Five Million Dollars ($25,000,000.00).**

The acknowledgment and execution of such bond by the said Attorney in Fact shall be as binding upon this Company as if such bond had been executed and acknowledged by the regularly elected officers of this Company.

The **RLI Insurance Company** further certifies that the following is a true and exact copy of the Resolution adopted by the Board of Directors of **RLI Insurance Company**, and now in force to-wit:

"All bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys in Fact or Agents who shall have authority to issue bonds, policies or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

IN WITNESS WHEREOF, the **RLI Insurance Company** has caused these presents to be executed by its ___Vice President___ with its corporate seal affixed this ___19th___ day of ___January___, ___2010___.

RLI Insurance Company

By: _____
Roy C. Die                    Vice President

State of Illinois } SS
County of Peoria }

On this ___19th___ day of ___January___, ___2010___, before me, a Notary Public, personally appeared ___Roy C. Die___, who being by me duly sworn, acknowledged that he signed the above Power of Attorney as the aforesaid officer of the **RLI Insurance Company** and acknowledged said instrument to be the voluntary act and deed of said corporation.

By: *Cherie L Montgomery*
Cherie L. Montgomery                    Notary Public

"OFFICIAL SEAL"
CHERIE L. MONTGOMERY
COMMISSION EXPIRES 02/02/12

**CERTIFICATE**

I, the undersigned officer of **RLI Insurance Company**, a stock corporation of the State of Illinois, do hereby certify that the attached Power of Attorney is in full force and effect and is irrevocable; and furthermore, that the Resolution of the Company as set forth in the Power of Attorney, is now in force. In testimony whereof, I have hereunto set my hand and the seal of the **RLI Insurance Company** this ___12___ day of ___April___, ___2010___.

RLI Insurance Company

By: _____
Roy C. Die                    Vice President

*1255723030110*

A0058707

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

Bky No. 10-43005 NCD

In re:

Chapter 7

Auto Point, Limited

Debtor.

## MEMORANDUM IN SUPPORT OF MOTION FOR EXPEDITED
## HEARING AND FOR RELIEF FROM THE AUTOMATIC STAY

### INTRODUCTION

Automotive Finance Corporation ("AFC"), submits this Memorandum of Law in Support of its Motion for Expedited Hearing and Relief from the Automatic Stay. AFC respectfully requests this Court to enter an Order granting (1) an expedited hearing and (2) the relief sought § 362(d)(1) because AFC lacks adequate protection of its interest in the Collateral as discussed below.

### FACTS

The facts supporting AFC's request for relief are set forth in the accompanying verified motion and are incorporated herein by reference.

### ARGUMENT

**A.      Introduction.**

"On any motion for relief from stay under § 362(d), the moving party has the burden of proof on the issue of the debtor's equity in any property involved and the party opposing the motion has the burden of proof on all other issues." *In re Lilyerd*, 49 B.R. 109, 114 (Bankr. D. Minn. 1985); *see also* 11 U.S.C. § 362(g).

AFC is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). *See*

*Production Credit Assoc. of the Midlands v. Wieseler (In re Wieseler)*, 934 F.2d 965, 968 (8th

Cir. 1991). 11 U.S.C. § 362(d)(1) provides as follows:

> (d) On request of a party in interest and after Notice and a
> Hearing, the Court shall grant relief from the stay provided
> under subsection (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such stay
> > (1) for cause, including the lack of adequate protection
> > of an interest in property of such party in interest; .... .

**B.** **Motion to Prevent Debtor's further sales of AFC's collateral and allow AFC to pursue the collateral pursuant to Judge Larson's April 9, 2010, Order.**

Pursuant to 11 U.S.C. ¶ 363(e) and Rule 4001(b)(1), Federal Rule of Bankruptcy

Procedure, AFC seeks an Order of the Court prohibiting the further sale or lease of AFC's

Collateral (as the Collateral relates to the Vehicles identified in AFC's Motion) and the following

relief:

 a. Terminate the automatic stay with respect to AFC's interest in the

Collateral;

 b. Terminate the automatic stay with respect to the Facility and its contents

(as identified in AFC's Motion); and

 c. Terminate the automatic stay as it relates to AFC's ability to enforce the

remedies provided by Judge Larson's April 9, 2010, Order.

In sum, the extent of the Debtor's pre-petition "out of trust" sales and its inability to

explain how thousands of dollars comprising the proceeds of AFC's Collateral were

misappropriated by the Debtor pre-petition is sufficient cause for the Court to prohibit the further

sale of AFC's Collateral and allow AFC to locate and seize the Collateral pursuant to Judge

Larson's April 9, 2010, Order.

**C.**   **Relief from the automatic stay should be granted pursuant to § 362(d)(1) "for cause."**

Under Section 362(d)(1) of the Bankruptcy Code, relief from the automatic stay shall also be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest."

The standard for "cause" under § 362(d)(1) is broad, and may extend beyond the one enumerated ground of lack of "adequate protection" as defined by 11 U.S.C. §361. *In re Lilyerd*, 49 B.R. 109, 116 (Bkrtcy. D. Minn. 1985) (citing *In re Rich*, 42 B.R., 42 B.R. 350, 354 (D.Md 1984)).   In this case, because of the Debtor's existing and continuing out of trust sales and resulting diminution in the value of AFC's collateral, among other reasons, the Debtor cannot adequately protect AFC during the Case.   Indeed, AFC's Collateral is no longer located at Debtor's facility and its whereabouts is unknown.   Because of the unique mobility and liquidity of the Collateral, it is clear that the stay should be lifted so that AFC may locate and secure the Collateral.   In sum, cause exists for relief under 11 U.S.C. § 362(d)(1).

**E.**   **Expedited relief should be granted**

Fed. R. Bankr. P. 9006(c) provides that the Court, for cause shown, may order a notice period otherwise dictated by the rules reduced.   Local Rule 9006-1(d) further provides that if expedited relief is necessary, the party shall request an expedited hearing and shall take all reasonable steps to provide all parties with the most expeditious service and notice possible and shall file an affidavit specifying the efforts made.

For the reasons set forth in the accompanying motion, cause exists to grant AFC an expedited hearing in this matter.

## CONCLUSION

Based on the foregoing AFC respectfully requests that the Court grant its motion for (1) an expedited hearing; and (2) the other relief requested in AFC's Motion.

**DATED:** May 4, 2010.                    **FABYANSKE, WESTRA, HART & THOMSON, P.A.**

By:   /s/ Matthew T. Collins
Paul L. Ratelle (#127632)
Matthew T. Collins (#0315758)
Jeffrey W. Jones (#311418)
800 LaSalle Avenue, Suite 1900
Minneapolis, MN 55402
(612) 359-7600
**ATTORNEYS FOR AUTOMOTIVE FINANCE
CORPORATION**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

Bky No. 10-43005 NCD

In re:

Chapter 7

Auto Point, Limited

**ORDER**

Debtor.

THIS MATTER came on for hearing before the undersigned Judge of this Court upon a motion by Automotive Finance Corporation ("AFC").  Appearances are noted on the record. Based upon the evidence adduced at the hearing, the arguments of counsel, and on all files and records herein, the Court issues the following Order.

IT IS HEREBY ORDERED THAT:

1.     AFC's Motion for Expedited Relief is **GRANTED**;

2.     AFC's Motion for Relief from Automatic Stay is **GRANTED**;

3.     That the automatic stay of 11 U.S.C. § 362(a) of the United States Bankruptcy Code is hereby immediately terminated as to AFC and, accordingly, AFC is authorized to exercise and/or enforce any and all rights and remedies as to the Debtor and the Debtor's property under applicable law including, without limitation, taking immediate possession of any and all of the Debtor's property in which AFC holds a security interest as more fully described in AFC's Motion and the documents accompanying AFC's Motion and exercising the remedies identified in the Honorable Gary R. Larson's April 9, 2010, Order filed in *Auto Finance Corporation v. Auto Point Limited, et al.*, Court File No.:  27-CV-10-7018 (Henn. Cty. Dist. Crt. April 9, 2010).

4.     Notwithstanding Federal Rules of Bankruptcy Procedure 4001(a)(3), this order is

effective immediately.

Dated: May ___, 2010          BY THE COURT:


_____
NANCY C. DREHER
UNITED STATES BANKRUPTCY COURT JUDGE